We'll move on to the fifth case of the day, Raleigh Mitchell v. United States, number 14-3759. Mr. Stephenson. Good morning, Your Honors. May it please the Court, Adam Stephenson on behalf of Raleigh Mitchell. Mr. Mitchell raised two claims in this Court-granted Certificate of Appealability on two claims of ineffective assistance of counsel with regard to plea negotiations, and I'm happy to address questions the Court may have on the substance of those claims. However, today I'd like to focus on the additional item that the Court added to the Certificate of Appealability, that is, whether the district court abused its discretion in not conducting an evidentiary hearing with regard to Mr. Mitchell's ineffective assistance claims. Under 2255B, a court must grant a hearing unless findings and filing, or excuse me, filings, and the record conclusively shows that the individual is entitled to no relief. Specifically with regard to ineffective assistance claims in Ward v. Jenkins, a full record, and in particular with credibility determinations, is necessary to truly evaluate ineffective assistance claims. In Mr. Mitchell's case, he raised claims with regard to the amount of advice he received, as well as with regard to the communication of the plea offers, both in terms of the manner as well as the substance. The government then responded and in doing so also filed with it a declaration from Mr. Patain, Mr. Mitchell's attorney at the time. The affidavit and Mr. Mitchell's filings differ significantly in a few key areas. And following this Court's cases in Castillo, Daniels, Estramera, this Court has routinely said that these issues cannot be decided on the basis of declarations alone. And in fact, the purpose of having any such declarations or affidavits from counsel or from the parties is to determine whether there is a factual dispute, not to resolve it. That is for the hearing. That is for the credibility determinations that this Court requires. Mr. Stephens, Mr. Bratton attached to his affidavit a couple of letters from October 29th and November 3rd, shortly before trial. Is there any doubt about whether those letters were sent or received? Based upon the record before us, there's nothing to guarantee it, nor is there any doubt. Has Mr. Mitchell denied that? To the best of my knowledge, no. Not on the record. He has not. Okay. Because those letters show that an awful lot of the missing information that Mitchell is complaining about was in fact presented to him well before trial. On one point with regard to the letters, Mr. Brattain alleges or states that he provided Mr. Mitchell with the relevant guidelines. One of the concerns in this case is with regard to the murder cross-reference found in United States Sentencing Guidelines 2D1.1. Again, Mr. Brattain identifies that he provided Mr. Mitchell the relevant guidelines, which would be 2D1.1. But Mr. Mitchell, in a situation of an unsophisticated client, frankly, as the government indicates, given the complexity of the sentencing guidelines, being provided 2D1.1 is not the same as properly advising a defendant of the significant likelihood in a case such as this that he would be facing a life guidelines range. He has to specify the law that provides that, is what you're saying? He has to educate the defendant to the law of the sentencing guidelines. Correct. What he told him was what the result would be if he persisted in his position. Was there any error in what he told the client? There was no error in the statement that he could be looking at life. That's an accurate reflection of the statutory maximum. And now, in hindsight, that was accurately what happened. You will be looking at life is the comment, right? Correct. What's missing is the connection and the reason why. Why is that the advisory guidelines, which the Supreme Court, this Court, and others have held, still carry significant sway, even post-Booker, knowing that and knowing that It's a crime shame, too, but go ahead.  at any criminal history level, at any other consideration, as soon as that murder cross-reference is found and implemented, it is a life guidelines range. And again, different than perhaps some statement of it could be life or would be life or something else. That is something much more concrete. And this Court has said that there is a duty to explain the law of sentencing in more v. Bryant. Give some amount, yes, that is accurate that life was the maximum sentence and that that was included in a letter to Mr. Mitchell. But the other, in addition to the sentencing information, there were the other material terms of the plea agreement. One material term was that the plea agreement required some amount of cooperation on behalf of Mr. Mitchell. Mr. Mitchell considered that and asked his attorney for further information. This is similar to the case in Estramera where, again, cooperation was at issue and there was some amount of back and forth amongst the parties about what that would entail and what would be the full scope of that. In Estramera, there was further movement away from testimony and providing information to something far less. But the critical question is what was the nature of the cooperation and what was done. Mr. Mitchell says he asked for that information. He asked what all that would entail, both in terms of what he would need to do and what would be able to be done to guarantee his potential safety. And not given that information, he could not decide. What is a defense lawyer supposed to say in response to this kind of question about safety for me and my family if I cooperate? Immediately, he's supposed to say, I'm going to check with the government. I'm going to inquire on behalf of you and then report that information back. The attorney acts as a conduit with the government. It's the attorney's job to act as that helping individual, that communication conduit to the government. At the time, clearly we're not expecting the defense attorney to say anything in terms of guarantees if they haven't already been provided by the government. Part of my concern here, Mr. Stevenson, is that from these letters, it's clear that the general notion of cooperation in return for a 20-year recommendation from the government had been discussed between counsel and had been communicated more than once to Mr. Mitchell. And he had apparently expressed no interest in it. And so I'm concerned that the argument that you're making here would impose on defense counsel and prosecutors a duty to waste time negotiating the details of something the defense isn't interested in. Respectfully, we would disagree, and we think that actually reflects the need for the hearing in this case. Mr. Mitchell, in his filings, says this was a singular communication to him of the potential to cooperate for the 20-year plea agreement. Mr. Bertano. This was the by-the-way comment the first morning of trial, right? It was some, whether, I wouldn't characterize it perhaps as by-the-way. That's the way he characterized it. Correct. It was a singular communication at the beginning as opposed to, as Mr. Bertano alleges, the repeated efforts. And yet the court decided, again, based apparently on a credibility determination, that it was, in fact, repeat efforts made on behalf of Mr. Bertano. That's why I started with the letters. The letters are before trial, and I haven't heard anything from Mitchell saying, no, I never got those letters, or Bertano is wrong in what he says about those letters. And we would agree, but they also do not contradict what, that Mr. Mitchell asked for the information and Mr. Bertano, there's simply an absence of information about what, if anything, Mr. Bertano did to try to answer his client's question with regard to that very critical, material fact in the eyes of Mr. Mitchell. I see that I'm in my rebuttal. I will reserve the remainder of my time. All right. Mr. Reitz for the government. May it please the court, Brian Reitz for the government. I think, as this court has already noted, the letters take this case far from the credibility determination in which a hearing must be granted. Here we have letters, so actual evidence, documentation, that pertain, advise Mitchell that the government was at least willing to discuss a plea negotiation centered around 20 years in exchange for some cooperation. Mitchell rejected that, and even to this day, he's not claimed that he would accept that because he's continued to claim that he had no involvement in Hurd's murder. He was adamant at trial and at sentencing. Even his motions on the 2255 don't say that he was willing to accept this. He sort of shifts the attention to the safety of the family. And as far as pertains advice, we've heard even today that pertain accurately advised Mitchell about the consequences of the plea versus the trial as it pertains to sentencing. And the safety is really, I think, the exact sort of thing that the Fourth and Eighth Circuits have expressed concern about with nation or inchoate pleas because we're just in the land of speculation as to what the government might have offered, what it would have gotten approval to offer, whether a defendant would have accepted it, whether the court would have accepted it. So I think that's really, there's a big problem with that as well, though, again, I would go back to if there was any evidentiary dispute based just on the affidavits, the letters take it out of that completely because the letters offer hard proof that Mitchell received this communication and he rejected it. The court has no questions on that point. The government will rest. Thank you. Mr. Davidson. Thank you. Just to address one issue raised by the government in their brief argument, with regard to whether an individual is due the right to effective assistance of counsel when there isn't what the government terms as a formal plea, both Lafler and Fry did not specifically address that question. Fry did so only because there was a formal offer in that case. And there is commentary in Lafler at 1384 that says that the right to counsel extends to the entire plea process, not just with regard to offers. And furthermore, ABA standard, which Strickland versus Washington looks to in terms of guidance about the effectiveness of counsel, standard for defense function 4-6.2b says there is a duty to communicate and advise about all terms and all offers, not just those that are formal. Mr. Stevenson, if we ordered a hearing and petitioner prevailed, what would the remedy be? The remedy here, and we cite this in our briefs, the remedy, as this court has previously said, should be tailored to the specific and effective assistance alleged. Here it was effectively a denial to continue in the negotiation stage. We take no ---- Sounds like an invitation to speculate. The opportunity to cooperate is no longer available. He doesn't have anything to trade. I don't know if the opportunity to cooperate is not necessarily available. I don't know if that's in the record. I don't, frankly, at this point, know how the investigation into the underlying criminal activity of that matter sits. But I think it really is about giving the individual the right to engage in plea negotiations with effective counsel. Thank you. Thank you, counsel. Thank you, Mr. Stevenson, for taking on this appointment. We thank you for your work on behalf of the client and the court, and we thank Mr. Reitz for his able representation of the government as well. Thank you.